BURCHER v. CASEY.

4-3890

Opinion delivered June 3, 1935.

T. A. Gray, I. J. Matheny, C. A. Caldwell, John H. Caldwell and Virgil Butler, for appellant.

Dene H. Coleman and Shields M. Goodwin, for appellee.

MEHAFFY, J. L. M. Lawrence, who resided at Batesville, Arkansas, and was about 81 years old at the time of his death, made a will a short time before his death. He stated in his will that he had already executed a deed to his home place to the St. Paul Episcopal Church of Batesville, Arkansas, and had left the same with S. M. Casey to be delivered at his death, and then says: "I now in this will, hereby confirm this grant in fee simple of the above-described lands to St. Paul's Episcopal Church of Batesville, Arkansas." He then gives certain lands to the Odd Fellows' Home in West Batesville. He bequeathed his money which he had on deposit in St. Louis to the American Red Cross. He gave to W. A. Rutherford $100 in addition to what Rutherford owed him. He gave to Rachel Martin, a colored servant, $100, and the rest of his property he gave by his will to the State Confederate Home of Little Rock, the Tuberculosis Sanitarium at Booneville, and St. Paul's Episcopal Church at Batesville, share and share alike. He appointed Sam Casey the executor of his will.

The will was in due form, and there is no contention that it is not in proper form. The will was filed, proof made, and order of the probate court establishing

the will. An appeal was taken from the judgment of the probate court by appellant by W. A. Rutherford, acting as attorney in fact for appellant. The following objections were filed to the will:

"Comes W. A. Rutherford, attorney in fact, and states to the court that he has power of attorney to represent Lou Lawrence Burcher, who was a niece of L. M. Lawrence, deceased, and files this her objections to said last will and testament of said L. M. Lawrence, deceased, and says: That she is the nearest relative of the said L. M. Lawrence, deceased, and that said will is very unnatural. That the said L. M. Lawrence was not capable mentally and physically to make the will that he was purported to have made on the 8th day of July, 1933. That the said L. M. Lawrence, deceased, did not know the contents of the aforesaid purported will. That at the time the said L. M. Lawrence signed the said purported will on the 8th day of July, 1933, said will was not read to him, the said L. M. Lawrence, by the purported executor of said will or any one else and did not know the contents thereof; therefore could not have known the terms set forth in the purported will of July 8, 1933, the persons to whom his property was given and the mode of disposition of his estate; that he was too weak physically and mentally to comprehend at that time the terms and purposes set forth in the purported will.

"Wherefore, your petitioner, Lou Lawrence Burcher, prays the court to set aside the order of the probate court probating the aforesaid will on the 30th day of August, 1933, and for the cancellation and annulling of the aforesaid purported will and for all other proper and lawful relief."

This is the third case appealed to this court involving the estate of L. M. Lawrence. The first case, *Rutherford* v. *Casey,* was decided by this court December 10, 1934, *ante* p. 79, and the second case decided within the last few days, was *Rutherford* v. *St. Paul's Episcopal Church.** The first case involved the transfer of bonds and securities by Lawrence to Rutherford. The second

*Not officially reported. See Appendix *post.* p. 1178.

case involved the deed to the Episcopal Church. The instant case involves the will of L. M. Lawrence.

It is first contended by the appellant that Lawrence did not have mental capacity to make the will. Appellant introduced a number of witnesses.

Glenn Hicherson testified that he knew L. M. Lawrence during his lifetime and had frequent conversations or talks with him, and that he had a conversation with him on July 9, 1933, and that in that conversation Mr. Lawrence told witness that he had willed his property to Bill Rutherford, his bonds, his stocks, and money; he had given it all to him. He did not say on what day he had made his will, but on July 9th Lawrence told him how he had disposed of his property. He also testified that to his knowledge Lawrence did not have any friends or inmates at the Confederate Home at Little Rock, nor in the Tuberculosis Sanitarium at Booneville. He testified that at that time Lawrence appeared to him to be rational.

The next witness, Marvin Bailey, testified that there was a very close association between witness' father and Lawrence, and that witness knew him fairly well. He also testified that he had a conversation with Lawrence in July; that Lawrence had sent for him, and in the conversation he did not remember exactly what Lawrence said to him, but he said something about his will; that Casey had made his will, and Rutherford's name was mentioned. Witness understood that Rutherford was to get his property; that he told witness that his will had been made, and everything was fixed, and he had left it up to Mr. Casey. He told witness on one or two occasions that Rutherford would get his stuff. He did not say that it was willed to Rutherford; he said his will was made; later on witness said something about his niece, and Lawrence said he did not know about her, but he was going to take care of Will Rutherford. This witness testified that Lawrence appeared to be normal and sane, and that he knew what he was talking about.

Alfred B. Deal, Miss Ola W. Doyle, H. M. Doyle, P. D. Driskill, Bernice Pritchard, H. M. Gowers, and Mrs. Bea Driskill all testified to conversations with L. M.

Lawrence and all of them that pretended to know anything at all about Lawrence's mental condition testified that he was sane.

After the evidence was all introduced, the court directed the jury to find in favor of the bill, which it did, and judgment was entered accordingly. This appeal is prosecuted to reverse said judgment.

Appellant argues that Lawrence either did not know what he was doing when he instructed the scrivener to write his will, or that the scrivener did not write the will the way Lawrence told him to write it. Appellant cites and relies on *Morris* v. *Collins*, 127 Ark. 68, 191 S. W. 963, and quotes the rule announced in that case as to undue influence. The court stated in that case that it was such influence as resulted from fear, coercion, or other cause that deprives the testator of his free agency in the disposition of his property. In the case referred to one witness testified that the appellant had great influence over the testator, had that influence all along. Another witness testified that he had much influence over her, never saw her refuse him anything.

In the instant case there is no evidence to show undue influence, and all of the evidence introduced by appellant shows that Lawrence was sane and had capacity to make a will.

The next case to which appellant calls attention is *Tobin* v. *Jenkins*, 29 Ark. 151. The court in that case held that the manner in which the will was executed, the nature and extent of testator's estate, and numerous other things were proper to be shown to the jury, and afford important evidence in the decision of the question of the testator's capacity to make a will.

That would be true in this case if there were any evidence at all tending to show that the testator did not have capacity to make the will. There is no such evidence, and, on the contrary, all the evidence shows that the testator had capacity to make the will. All witnesses testify that he was sane, and in fact all the evidence offered by appellant consists of statements made by the testator about the time the will was executed.

Appellant calls attention to § 417 of 28 R. C. L. That section is to the effect that whether there was fraud or undue influence, and whether the will was executed by the testator without a knowledge of its contents, are questions of fact for the jury; but that is not all of the section. It closes with the statement: "Unless there was not sufficient evidence to sustain a verdict against the will."

As we have already said, there is no evidence in the instant case tending to show either undue influence or lack of capacity.

Appellant calls attention to Page on Wills, 969. It is stated there that if the evidence is in conflict it is error for the court to grant a nonsuit or to direct a verdict. There is no conflict in the evidence in the instant case, and the section referred to in Page on Wills further states: "If there is not sufficient evidence to justify the submission of the case to the jury, a verdict may be directed, a nonsuit ordered, and the like, even in States in which the intervention of a jury is necessary."

Page on Wills, p. 969, cites *Morris* v. *Raymond,* 132 Ark. 449, 201 S. W. 116, to the effect that: "If the evidence is conflicting, it is error for the court to grant a nonsuit or direct a verdict."

In determining whether a case should be submitted to the jury, all evidence which is introduced by the party who asked that such evidence be submitted must be regarded as true, and every inference which can fairly be drawn from the evidence must be drawn in favor of such party.

"If there is a complete want of evidence on behalf of the party upon whom the burden of proof rests as to one or more facts which are necessary to make out his case, the authorities agree that the case should not be submitted to the jury." Page on Wills, 970.

If there were any substantial evidence at all tending to show either lack of mental capacity or that the will was obtained by fraud or trickery without the knowledge of the testator, it would be the duty of the court to submit it to the jury; but where there is a total lack of evidence, as in this case, the court should direct a verdict.

The declarations made by a testator are inadmissible to show that the testator had not made the will. This court said: "The reason for rejecting such declarations, when not part of the *res gestae,* is that such declarations are not against the interests of the testator; he is under no obligations to speak the truth, and they are only hearsay evidence. It is pointed out also that the statute, having required certain solemnities by which wills may be revoked, it would be unreasonable to allow them to be defeated or disproved by the careless utterances of the testator. * * * 'He may, to secure his own peace and comfort during life, to relieve himself from unpleasant importunities of expectant heirs, conceal the nature of his testamentary dispositions, and make statements calculated and intended to deceive those with whom he is conversing.' For these reasons, we think the circuit court did not err in rejecting proof of the declarations of Richard Hunt to the effect that he had made no will." *Leslie* v. *M'Murtry,* 60 Ark. 301, 30 S. W. 33; *Flowers* v. *Flowers,* 74 Ark. 212, 85 S. W. 242.

The Supreme Court of the United States said: "Mr. Justice Washington said that declarations of the deceased, prior or subsequent to the execution of the will, were nothing more than hearsay, and there was nothing more dangerous than their admission, either to control the construction of the instrument or to support or destroy its validity. * * * After much reflection upon the subject, we are inclined to the opinion that not only is the weight of authority with the cases which exclude the evidence both before and after the execution, but the principles upon which our law of evidence is founded necessitate that exclusion. The declarations are purely hearsay, being merely unsworn declarations, and, when no part of the *res gestae,* are not within any of the recognized exceptions admitting evidence of that kind." *Throckmorton* v. *Holt,* 180 U. S. 552; *Longer* v. *Beakley,* 106 Ark. 213, 153 S. W. 811.

If there had been evidence tending to show mental incapacity of the testator, his declaration might be admissible as tending to show mental capacity or incapacity, but, since all of the evidence shows that he had the

mental capacity to make a will, the declarations of the testator were not admissible, and, if admissible, they alone would not prove either mental incapacity or fraud or trickery. A testator might very well tell persons that he had made a will disposing of his property in a certain way, when he had in fact not done so. He might make these declarations to keep from being annoyed by persons interested. At any rate, there is no substantial evidence in this case justifying its submission to the jury, and the court correctly directed a verdict.

The judgment of the circuit court is affirmed.